IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PERALTA COMMUNITY COLLEGE DISTRICT,<br><br>Defendant. | Case No.: 12-cv-5943 JSC<br><br>**ORDER RE: MOTION TO DISMISS PURSUANT TO RULE 12(B)(7), AND ALTERNATIVE MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND MOTION TO STRIKE (Dkt. No. 5)** |

Now before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), and alternative Motion to Dismiss in part pursuant to Rule 12(b)(6) and Motion to Strike portions of the Complaint. (Dkt. No. 5.) Having carefully considered the parties' pleadings and the relevant legal authority, and having had the benefit of robust oral argument on January 31, 2013, as well as supplemental briefing, the Court DENIES Defendant's motion pursuant to Rule 12(b)(7), GRANTS the motion to dismiss the second cause of action pursuant to Rule 12(b)(6), and DENIES the motion to strike pursuant to Rule 12(f).

## BACKGROUND

Plaintiff First National Insurance Company ("First National") brings suit against Defendant Peralta Community College District ("District") for breach of contract and violation of California's Prompt Payment Statutes (Public Contract Code § 7107) based on the District's alleged breach of a takeover agreement with First National relating to the construction of certain ADA improvements at Peralta's Laney College. (Complaint ¶ 2.) Plaintiff, a Massachusetts corporation, brings suit in federal court alleging diversity jurisdiction under 28 U.S.C. § 1332.

The action arises because of a construction contract between Defendant and IMR Contractor Corporation ("IMR") whereby IMR was to oversee construction of the aforementioned ADA improvements at Laney College (the "Contract"). (Complaint ¶¶ 12-13.) On June 28, 2010, IMR procured a performance bond (the "Performance Bond") from First National to guarantee IMR's performance of the Contract. (Complaint ¶ 16.) IMR began work, but then on May 20, 2011, IMR ceased work on the project and filed a voluntary bankruptcy petition under Chapter 11. (Complaint ¶ 23.)

On July 20, 2011, the District made a demand against the Performance Bond for First National to complete the project. (Complaint ¶ 24.) The following month First National and the District obtained relief from the automatic bankruptcy stay imposed by 11 U.S.C. § 362(a) to complete the project. (Complaint ¶ 26.) IMR (through the bankruptcy trustee), First National, and the District also filed two stipulations in the bankruptcy action. In one IMR rejected the Contract; in the other the parties agreed that "pursuant to the payment bonds, the Contract and principles of equitable subrogation, all funds due under the Contract from Peralta shall be paid directly to the Surety." (Complaint ¶ 25; Dkt. No. (RJN) Exs. 2, 3.)

On September 12, 2011, First National entered into a takeover agreement (the "Takeover Agreement") with the District whereby First National, as surety, agreed to complete the project pursuant to the terms and conditions of the Contract and Performance Bond. (Complaint ¶ 27, Exhibit D.) First National entered into a completion agreement with Vertex Construction Services to complete the project. (Complaint ¶ 28.) First National

alleges that it completed all work required by the Takeover Agreement and Contract on or about March 14, 2012, but that the District has failed to comply with its obligations to pay First National the balance due and owing. (Complaint ¶¶ 43-45.) First National thereafter filed this lawsuit alleging breach of contract and failure to comply with California's Prompt Payment Statute.

The District moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) because First National did not join IMR as a plaintiff and the District contends that IMR is a necessary and indispensable party pursuant to Federal Rule of Civil Procedure 19. (Dkt. No. 5.) Because joinder of IMR, a California corporation, would defeat diversity jurisdiction and deprive the court of subject matter jurisdiction, the District contends that the action must be dismissed. Alternatively, the District moves to dismiss and to strike portions of the Complaint.

## LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for a party's failure to join persons whose presence is needed for a just adjudication under Federal Rule of Civil Procedure 19. A 12(b)(7) motion to dismiss for failure to join will be granted only if the Court determines that the absent party is necessary, joinder is not feasible, and the party is "indispensable." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Defendant bears the burden of persuasion in arguing for dismissal under Rule 19. *See Clinton v. Babbit*, 180 F.3d 1081, 1088 (9th Cir. 1999).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a) (2) a party is

only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).

Pursuant to Federal Rule of Civil Procedure 12(f) a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

**DISCUSSION**

**A. <u>Failure to Join a Party</u>**

The District contends that the Complaint must be dismissed because IMR is a necessary party. Federal Rule of Civil Procedure 19 requires that the missing party be both necessary and indispensable to the action to grant such a motion. To determine whether dismissal is appropriate, the Court engages in "three successive inquiries." *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id*. If this question is answered in the affirmative, "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id*. If joinder is not feasible, the third step requires the court to

4

determine "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id*.  In assessing necessity and indispensability, the inquiry should be both fact-specific and practical.  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-119 (1968).

### 1.  Necessary Party[1]

The first prong of Rule 19(a)(1)'s necessary party test provides that a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).

Defendant contends that IMR is a necessary party because 1) First National is attempting to enforce a construction contract to which it is not a party, and 2) IMR's conduct under the initial Contract will be at issue in this case.  Plaintiff counters that the initial Contract is not at issue here; instead, the dispute centers on the parties' respective obligations under the Takeover Agreement to which IMR is not a party.  Further, to the extent the initial Contract is at issue, Plaintiff contends that First National was assigned and owns all of IMR's prior rights in the Contract by virtue of the stipulation in the bankruptcy action that "pursuant to the performance and payment bonds, the Contract, and principles of equitable subrogation, all funds due under the Contract from Peralta shall be paid directly to the Surety."[2]

In conducting a Rule 19(a)(1)(A) analysis, courts ask whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties. *See Northrop Corp. v. McDonnell Douglas Corp*., 705 F.2d 1030, 1044 (9th Cir. 1983). This prong concerns whether complete relief may be accorded only among *current* parties to the action.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 879 (9th Cir.

---

[1] The 2007 Amendments to Rule 19 changed the language from necessary and indispensable party to "persons required to be joined if feasible."  The Advisory Committee notes indicate that these amendments were intended to be "stylistic only." Because the necessary party terminology remains part of nomenclature for analyzing these cases the Court uses it interchangeably here.

[2] The Court takes judicial notice pursuant to Federal Rule of Evidence 201 of this stipulation filed in *In Re IMR Contractor Corporation*, United States Bankruptcy Court, Northern District of California, No. 11-45500 WJL, Docket No. 96.

2004); *see also NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005) ("A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is not material.")(internal quotation marks and citation omitted)).

Here, Plaintiff's first cause of action is for breach of the Takeover Agreement, Performance Bond, and Contract. Plaintiff and Defendant are the only parties to the Takeover Agreement which incorporates the Contract by reference. (Dkt. No. 1-3, § II.2.) Although IMR was a party to the Contract, IMR has rejected the Contract and stipulated that all funds due under the Contact are to be paid to First National as the surety. "[I]f a party can recover damages sufficient to compensate for his or her injuries from the defendants already in the action, additional parties that are also jointly and severally liable are not needed to afford complete relief." *A.D. v. California Highway Patrol*, No. 07-5483, 2009 WL 733872, at *2 (N.D. Cal. Mar. 17, 2009); *see also Swanigan v. Amadeo Rossi*, S.A., 617 F.Supp. 66, 67 (E.D. Mich. 1985) (holding that gun owner was not needed to afford complete relief when the gun manufacturer was already named as a defendant and plaintiff could recover all damages from manufacturer). As the only relief Plaintiff seeks is damages for breach of contract and a violation of California's Prompt Payment statute, and IMR has stipulated that all monies due to it under the Contract are to be paid to First National, the Court can afford complete relief without IMR as a party.

Having concluded that joinder of IMR is not necessary for the Court to provide complete relief between the parties to this action, the Court turns to the second prong of Rule 19(a)(1) which states that joinder is required if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Because IMR has not claimed an interest in the action, the Court need not analyze this factor further. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (holding that where the

non-party was aware of the action and chose not to claim an interest joinder was not necessary).

Defendant's lengthy argument that IMR is necessary because IMR may be subject to collateral estoppel based on this action is unpersuasive. *Aguilar v. Los Angeles County*, 751 F.2d 1089 (9th Cir. 1985), was a medical malpractice lawsuit brought by the parents of a minor who had suffered permanent injuries. The court held that dismissal pursuant to Rule 19 was proper because the absent minor "claimed an interest relating to the subject of the action and that disposition of the action in his absence could impair or impede his ability to protect that interest under the California law of collateral estoppel." *Id.* at 1091. In particular, if the parents failed to prove the defendants' negligence, the minor could be barred from suing for negligence for damages arising after the age of majority. *Id.* at 1092-94. IMR claims no such interest here; to the contrary, it has rejected the Contract and stipulated that all payments due and owing under the Contract should be paid to First National. Similarly, in *Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985), the Ninth Circuit also considered the potential collateral estoppel effect, but there the non-party administered the health plan that the plaintiff was attacking. *Id.* at 817. Indeed, the non-party had actually joined in a counterclaim filed by the defendant seeking a declaration that it and the defendant had performed all of their legal duties. *Id.* Again, no such claimed interest is present here. As Defendant concedes, IMR could seek relief from the automatic bankruptcy stay and claim an interest in this action, but IMR has not done so.

The Court is similarly unpersuaded by Defendant's argument that IMR is a necessary party as a matter of law based on its status as a co-obligor on the bond with First National. The cases upon which the District relies, *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990-991093 (9th Cir. 1994) and *Harrell & Sumner Contracting Co. v. Peadbody Peterson Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977), involved the federal anti-collusion statute, 28 U.S.C. section 1359. There is no evidence of collusion here; to the contrary, the District itself was a party to the operative stipulations and the Takeover Agreement. Moreover, "the cases dealing with this issue hold that a co-obligor is

7

not an indispensable party under Rule 19." *Rosenberg v. Neubeck*, , 1996 WL 297046, at *4 (N.D. Cal. May 30, 1996) (citing *Janey Montgomery Scott v. Shepard Niles*, 11 F.3d 399 (3rd Cir. 1993); *Wolgin v. Atlas United Financial Corporation*, 397 F.Supp. 1003, 1012 (E.D. Pa. 1975)). Accordingly, Defendant has failed to meet its burden of establishing that joinder is required under Rule 19(a)(1). The Court therefore need not address whether IMR is an indispensable party necessitating dismissal under Rule 19(b). The motion to dismiss pursuant to Rule 12(b)(7) is denied.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendant also moves to dismiss pursuant to Rule 12(b)(6) the second cause of action for a violation of California's Prompt Payment statute, Public Contract Code Section 7107. The statute, which imposes penalties and attorneys' fees, applies to all contracts "relating to the construction of any public work of improvement" and provides that "[t]he retention proceeds withheld from any payment by the public entity from *the original contractor*, or by the original contractor from any subcontractor, shall be subject to this section." CAL. PUB. CONTRACT CODE § 7107(a), (b) (emphasis added). The District contends that Plaintiff cannot make a claim under this statute because it is not an "original contractor" within the meaning of section 7107(b). First National responds that it is a contractor because California Civil Code Section 8018 defines a "direct contractor" as "any contractor who has a direct contractual relationship with the owner." Thus, contends First National, the Takeover Agreement creates a direct contractual relationship between Plaintiff and Defendant such that First National is entitled to remedies available to contractors pursuant to Section 7107.

The parties have not identified any caselaw addressing whether a surety insurer that engages a contractor to complete a contract on which the surety issued a performance bond may bring a suit under the Prompt Payment statute as an "original contractor." The one case cited by the parties in their supplemental briefing as considering the rights and obligations of sureties under Prompt Payment statutes illustrates the improbability of Plaintiff's theory of recovery. In *Washington Int'l Ins. Co. v. Superior Court (G.K. Backlund, Inc.)*, 62 Cal. App. 4th 981 (1998), a subcontractor brought an action against the surety on a public works

payment bond to recover money the prime contractor did not pay to the subcontractor, including a 2 percent per month interest penalty.[3] In concluding that the surety could be required include the interest penalty in its payment to the subcontractor, the court of appeals considered the purpose of a payment bond and the public policy implications of making the surety liable for the interest penalty. Because the purpose of a payment bond is to assure payment to any laborers employed to work on the public contract should the contractor default, the court concluded that this payment necessarily includes all amounts that the laborers would have been entitled to under the law including the interest penalty. *Id.* at 987-89. In considering the public policy implications, the court commented on the "tripartite [surety relationship], in which the third party (the obligee, or, here, the subcontractor), rather than the principal (here, the contractor), is protected by the surety's promise to pay if the principal does not, in exchange for which promise the principal pays the premium for the bond." *Id*. at 989. "[U]nder a surety bond, the principal is not indemnified; the surety can sue the principal for any sums it must pay out to the oblige, and [ ] public policy…is in no way offended." *Id*. This is true in part because "the premiums on surety bonds are calculated based on individual contract factors such as the financial stability of the principal, the size of the obligation being guaranteed, and the likelihood of default." *Id*. at 990. Thus,

> in calculating the premium for a payment bond on a public works project, a surety can take into account, as one of these factors, that it may be called upon to honor the contractor's obligation to pay not only the subcontract price, but an additional 2 percent per month interest penalty as damages for failure to make timely payment. The surety, as one in the business of calculating such risks and determining an appropriate price for undertaking them, is in a better position to extract payment for taking on this risk before issuing the payment bond than is the subcontractor to protect itself from the contractor's failure to make timely payments.

---

[3] *See also Morton Eng'g & Const., Inc. v. Patscheck*, 87 Cal. App. 4th 712, 720 (2001) (holding that "the conclusion of the court in *Washington International* that the 2 percent penalty is recoverable in civil actions under Public Contract Code section 10262.5 is equally applicable to actions under Public Contract Code section 7107").

*Id*. Although the court of appeals considered the surety's ability to recover this sum from the principal, the court notably did not consider whether the surety could recover the interest payment from the public entity because it would be contrary to public policy to do so.

"[R]isks should be borne by those best able to spread them out over the economy." *Id.* Here, the District, a public entity, has already been harmed by virtue of IMR's default; it should not be harmed again by being required to pay the surety a penalty fee which is designed to protect laborers and contractors. The surety, in contracting and taking on the payment and performance bonds, had the opportunity to factor the risk of default by the principal into its payment amount. It is thus unsurprising that First National is unable to identify any case in which a surety has been allowed to pursue claims under the Prompt Payment statute.

Moreover, the plain language of the parties' agreement contravenes First National's position. First National seeks penalties and fees under the Prompt Payment statute by virtue of the District's alleged violation of the Takeover Agreement. That Agreement, however, specifically states that First National is *not* a "contractor." In particular, the Agreement states:

> Surety to Perform Remaining Work. Surety shall be responsible for the performance of the Remaining Work through a Completion Contractor of its own selection . . . which Surety shall engage pursuant to the terms of a separate agreement. The Owner hereby acknowledges and accepts that Surety, by entering into this Agreement and taking over the Remaining Work, *Surety is not acting as a contractor* but is acting under and in accordance with Business and Professions Code section 7044.2.[4]

(Complaint, Ex. D, ¶ 4 (emphasis added).) Thus, the plain language of the Takeover Agreement provides that First National is not a contractor for purposes of its relationship with the District; rather, it is a surety which, in order to mitigate its liability under a performance bond, agreed to ensure that a new contractor complete the work of the original

---

[4] Section 7044.2 provides that a surety that engages a contractor to complete construction for a project for which the surety has issued a performance bond is exempt from the Contractors' License Law, provided all work is performed by licensed contractors. CAL. BUS. & PROF. CODE § 7044.2; CAL. CONSTR. L. MANUAL § 4:2 (6th ed.).

contractor. Similarly, Paragraph 17, which covers the "Surety's performance rights," states "[t]he Owner expressly agrees and acknowledges: (1) that Surety is entering into this Agreement not as a contractor, but as a means of satisfying the Surety's performance bond obligations…" *Id.* ¶ 17. Accordingly, the Prompt Payment Act on its face does not apply to First National as it is not an "original contractor" under the contract.

Finally, the Prompt Payment Act specifies who is a contractor and it does not include sureties. The statute allows a contractor to seek penalties against an owner, or a subcontractor to seek penalties from the original or prime contractor. The Public Contract Code, in which the Prompt Payment Act is embedded, expressly defines a "subcontractor" as "a contractor, within the meaning of the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code," who contracts directly with the prime contractor." CAL. PUB. CONT. CODE § 4113. Thus, for purposes of the Public Contract Code, and thus the Prompt Payment Act, "contractor" must also be defined by Chapter 9 of the Division 3 of the Business and Professions Code. That Chapter, in turn, defines a contractor as 1) a person who maintains or services air-conditioning, heating or refrigeration equipment, 2) a person or entity who submits a bid for a construction project, 3) a temporary labor service agency, 4) a person who performs tree removal or other tree work, or 5) a person in engaged in well drilling work. CAL. BUS. & PROF. CODE 7026.1. First National is plainly not a contractor within the meaning of this section. First National's reliance on Civil Code section 8018 is unavailing. That statute simply defines an "original" or "direct" or "prime" contractor in contrast to a subcontractor; it does not purport to define an original contractor for the purpose of the Public Contracts Code.

Accordingly, the Court concludes that First National is not a "contractor" as a matter of law within the meaning of the Prompt Payment statute, Public Contract Code Section 7107. Defendant's Motion to Dismiss the second cause of action is granted without leave to amend.

**C. Motion to Strike**

Finally, the District moves to strike the request for attorneys fees accompanying the first cause of action and to strike specific language from the Complaint pursuant to Federal

Rule of Civil Procedure 12(f). Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. *See* 5A C WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1380.

The District moves to strike the request for attorneys fees because the request is based on language in the Performance Bond which provides that "[i]n the event suit is brought upon this bond by the District and judgment is recovered, Surety shall pay all costs incurred by the District in such suit, including reasonable attorney's fees to be fixed by the court." (Dkt. No. 1-3, Ex. B.) Defendant challenges Plaintiff's allegation that the Bond was incorporated by reference into the Contract, and that this incorporation transformed the Bond's limited attorney fee clause into a general attorney fee clause applicable to all disputes under the Contract, including the Takeover Agreement, and not just those arising under the Bond.

Defendant's request to strike the prayer for attorneys fees is not the proper subject for a 12(f) motion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010) (holding that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law"); *see also Finuliar v. BAC Home Loans Servicing, L.P.*, No. 11-02629, 2011 WL 4405659, at *14 (N.D. Cal. Sept. 21, 2011) (denying a Rule 12(f) request to strike a request for attorneys fees and punitive damages under *Whittlestone*). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. *See Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d at 973.

Finally, with respect to Defendant's request that the Court strike specific language from the Complaint, the request is contained within the Notice of Motion, but Defendant does not support the request with any argument in the attached memorandum of points and authorities. As Defendant has failed offer any argument in favor of its contention that this

language is redundant, immaterial, impertinent, or scandalous the Court denies the motion to strike the language referenced in the Notice of Motion.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendant's motion to dismiss pursuant to Rule 12(b)(7), GRANTS the motion to dismiss the second cause of action with prejudice pursuant to Rule 12(b)(6), and DENIES the motion to strike pursuant to Rule 12(f).

**IT IS SO ORDERED.**

Dated: February 15, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE